UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                     Case No. 11-20318

EUGENE DAVIDSON, III,                                     HON. AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. 36)**

### I. INTRODUCTION

This is a criminal case. Defendant Eugene Davidson, III is charged in a three count indictment with one count of conspiracy and attempt to distribute cocaine in violation of 21 U.S.C. § 846 and two counts of possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g). Davidson challenges the March 3, 2011 search of his vehicle as violative of his constitutional rights, and seeks to suppress as evidence two assault rifles taken from his vehicle during the search. Before the Court is Davidson's motion to suppress (Doc. 36). For the reasons that follow, the motion will be denied.

### II. BACKGROUND

On September 19, 2012, the Court held an evidentiary hearing, at which time Davidson stipulated to certain events preceding the seizure of the rifles and testimony was elicited through witnesses.

In March of 2011, the FBI Conspiracy One Task Force, a task force comprised of

FBI, Detroit Police Officers and others, set up an undercover narcotics deal to purchase crack cocaine.  Task force Officer Michael Bryant, a Detroit Police Officer, worked with a confidential informant to stage a controlled buy.  The informant told Bryant that an individual named "Chris" agreed to sell him nine ounces of crack cocaine for approximately nine-thousand dollars.

On March 3, 2011, Chris contacted the informant and told him to meet at a gas station at the intersection of Warren and Cadillac streets in Detroit.  Bryant and the informant drove together in Bryant's unmarked police vehicle.  Chris was waiting in his GMC Suburban when Bryant and the informant arrived at the gas station.  Chris and the informant discussed the price of the drugs.  Chris told Bryant and the informant to follow him to the Family Dollar Store parking lot at the intersection of Gratiot and Helen streets to complete the transaction.

Bryant and the informant followed Chris to the Family Dollar parking lot.  After arriving in the parking lot, the informant exited Bryant's vehicle and went to talk to Chris.  Chris told the informant that "his guys" were in route with the drugs.  The informant walked back to Bryant's vehicle to inform him that they were waiting on others to arrive.  Then, the informant went back to the Suburban and waited with Chris for the "other guys" to arrive.

A short time later, Davidson arrived in the parking lot; he was driving a Dodge Stratus.  Bryant observed Davidson exit the vehicle and join Chris and the informant in the Suburban.  After a brief discussion inside the Suburban, the informant opened the door and walked back to Bryant's vehicle.  The informant told Bryant that "[Davidson] wants to see the cash."  Bryant told the informant to tell Davidson that he wanted to see the drugs first.  The informant went back to the Suburban and told Davidson that Bryant wanted to see the

drugs first.  Davidson told the informant the drugs were on the way to the parking lot.

After about five minutes passed, a third vehicle, an older model green Buick, arrived in the parking lot.[1]  Bryant observed Davidson exit the Suburban, approach the Buick, take a brown paper bag from the driver, and return to the Suburban.

The informant went back to Bryant's vehicle and told Bryant that, while he was inside the Suburban, Davidson showed him what appeared to be cocaine.  The informant told Bryant that he saw two plastic bags, which he believed each contained 4 ½ ounces of cocaine.

Bryant decided they should leave the parking lot in order for officers to arrest Davidson.

Bryant told Davidson and Chris that he believed they were trying to set him up, and he and the informant drove away from the parking lot.[2]  Chris called the informant on his cellular phone as they were leaving the lot and asked him, "What the fuck you doing?  We got the drugs right here."  The informant told Chris that Bryant was "hinked up."

As they were leaving the parking lot, Bryant observed Davidson return to the Buick.  Bryant advised members of the arrest team that the drugs may have been returned to the Buick.  Davidson then went back to his vehicle, and all three vehicles left the parking lot.

---

[1] It is unclear whether the informant was in the Suburban or Bryant's vehicle while waiting for the drugs to arrive.  During the five minute waiting period, Bryant became concerned that he and the informant may have been set up for a drug robbery.  He began to discuss leaving the parking lot.  It is unclear whether this discussion took place with the informant or by radio with other task force officers.  However, by the time the Buick had arrived in the parking lot, the informant was back in the Suburban.

[2] Presumably, Bryant rolled down his window and yelled out to Davidson and Chris in the Suburban.  This is not clear from the facts that the parties stipulated to.

Up to this point, the parties stipulated as to what occurred. The remaining facts were elicited through witness testimony at the suppression hearing.

After leaving the parking lot, Bryant observed the Suburban, Buick, and Davidson's vehicle exit the parking lot onto Gratiot Avenue. After a short distance, the Buick and Davidson's vehicle turned onto a street out of Bryant's view. However, the surveillance team continued to monitor the vehicles.

Sergeant Myron Weathers, the supervisor of the operation, communicated with Bryant through police radio. Weathers told Bryant that "the Stratus and the older model Buick were stopped in the middle of the street and they were exchanging items, doing a hand-to-hand exchange [in which] the driver of the green vehicle had handed Mr. Davidson an item, and at that point he had believed that the drugs had been passed to Mr. Davidson." Davidson testified that "Mr. Moo," the person in the Buick, threw twenty-five dollars at Davidson's car window as a "tip." Davidson says he did not exit his car to pick up the money and saw Mr. Moo exited the Buick to retrieve it. Both vehicles then drove away.

Bryant testified that after this exchange, Weathers believed that the man in the Buick had transferred the drugs back to Davidson. Thus, the surveillance team was instructed to follow Davidson's vehicle until a marked patrol car could initiate a traffic stop.

Detroit Police Officer Dondre Penn, in the task force's marked patrol car, testified that he was instructed to initiate a traffic stop of Davidson's vehicle. Penn was waiting at the intersection of Warren and Townsend streets until he received communication from the surveillance team to initiate the traffic stop.

Penn left his location and drove past the Family Dollar. The surveillance team was

tailing Davidson's vehicle and communicating its location to Penn.  Approximately three to four minutes after Penn received the instructions to initiate the traffic stop, he observed Davidson's vehicle make a left turn from VanDyke street onto Canfield street.  Penn followed Davidson onto Canfield street.

By the time Penn reached Davidson's vehicle, he observed the vehicle pulled over on the south side of the street.  Davidson exited from the driver's seat of his vehicle and began to walk north.  He made it to the other side of the curb.  A white male was walking towards Davidson, but Penn said two men were not talking to each other.  Davidson testified that he "was talking to a friend on the street."

Penn pulled his vehicle over behind Davidson's and approached Davidson.  Davidson testified that Penn had his gun drawn and told Davidson to "get on the ground."  Penn says Davidson recognized him and stated, "Oh, man, you again."

Penn immediately apprehended Davidson, handcuffed him, and took his car keys from his right hand.  Officer Dodson, an officer working with Penn, monitored Davidson on the street while Penn searched his vehicle.

Davidson disputes that he was outside of the police vehicle.  He says that immediately after he was handcuffed and searched, he was placed in the back of Penn's police vehicle.

Davidson's vehicle was unlocked when Penn approached it.  He opened the door and searched the entire front compartment, glove box, under the seats and front paneling on both sides, and the passenger area of the vehicle.  Penn subsequently searched the back of the vehicle.  No drugs were found.

However, when Penn searched the back of the vehicle, he noticed that the trunk was

5

accessible from the interior. He used Davidson's keys to unlock the trunk. A search of the trunk revealed two semi-automatic rifles in plain view.

Penn placed Davidson in the back of his vehicle and took him to the police station. Davidson's vehicle was impounded.

Davidson was interviewed at the police station, after which a third gun was recovered from his home. Davidson does not dispute the legitimacy of the search of his home.

The two guns found in the trunk of Davidson's vehicle are the subject of the motion to suppress.

### III. STANDARD OF REVIEW

A judge determines the admissibility of evidence, as a matter of law, outside the presence of the jury. Jackson v. Denno, 378 U.S. 368 (1964). At a suppression hearing, the government bears the burden in establishing admissibility of the evidence by a preponderance. Lego v. Twomey, 404 U.S. 477 (1972).

### IV. DISCUSSION AND ANALYSIS

#### A.

Davidson relies on Arizona v. Gant, 556 U.S. 332 (2009) to argue that the warrantless search of his vehicle was unconstitutional. He says the search was improper because he was already handcuffed and placed in the back of the police car at the time the search was conducted.

Under the Fourteenth Amendment, a search must be reasonable. A warrantless search is *per se* unreasonable unless an exception applies. U.S. Const. amend. IV; see Katz v. United States, 389 U.S. 347 (1967). If an exception does not apply, the

exclusionary rule bars the government from presenting the evidence seized at trial. The exclusionary rule is a procedural rule of federal constitutional law applicable to evidence seized in violation of the Fourth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961).

**B.**

One exception to the warrant requirement is the search incident to lawful arrest. United States v. Robinson, 414 U.S. 218, 231 (1973). In Gant, the Supreme Court held that the search incident to lawful arrest exception applies in two situations. First, if there is a reasonable possibility that the arrestee could gain access to the vehicle at the time of the search; and, second, when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 342-43 (internal citation and quotations omitted). A search incident to lawful arrest must be contemporaneous to the arrest. United States v. Chadwick, 433 U.S. 1 (1977).

Here, the warrantless search of Davidson's vehicle was proper under the search incident to lawful arrest exception. The totality of the circumstances led task force officers to believe that drugs would be found in Davidson's vehicle. In fact, it was reasonable for officers to believe that drugs would be found on Davidson's person or his vehicle based on his actions in the Family Dollar parking lot alone. When officers saw the man in the Buick stop next to Davidson's vehicle and make an exchange with Davidson, the belief that drugs would be found in Davidson's vehicle was heightened. Accordingly, the search of Davidson's vehicle was proper, incident to his arrest for conspiracy and attempt to distribute cocaine.

**C.**

In addition, the automobile exception justified the search of Davidson's vehicle.

Under the automobile exception, an officer can conduct a search without a warrant if there is probable cause that the vehicle "contains evidence of criminal activity." Gant, 556 U.S. at 347. Where probable cause to conduct a warrantless search exists, an officer may search the entire vehicle to find the objects for which the probable cause existed. United States v. Chadwick, 433 U.S. 1 (1977).

The task force officers had probable cause to suspect that Davidson's vehicle contained drugs. He was one of the targets in an undercover drug operation, and he appeared to deliver cocaine to the informant.

Penn testified that the trunk of Davidson's vehicle could be accessed through its back seat. After a search of the interior did not turn up any drugs, it was reasonable to believe that drugs may be found in the trunk. Penn did not know how Davidson accessed the trunk. As such, the automobile exception permitted the search of the entire vehicle, including the trunk, without a warrant.

## V. CONCLUSION

For the reasons above, Davidson's motion to suppress is DENIED. The government has met its burden in establishing that the search of Davidson's vehicle was constitutional.

SO ORDERED.

Dated: October 19, 2012         S/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 19, 2012, by electronic and/or ordinary mail.

                                S/Julie Owens
                                Case Manager, (313) 234-5160

8